NATIVE ECOSYSTEMS COUNCIL;
the Ecology Center; Sierra Club,
Plaintiffs—Appellants,

v.

UNITED STATES FOREST SERVICE, an agency of the U.S. Department of Agriculture; Tom Clifford, Supervisor, Helena National Forest; Kathleen McAllister; Dale Bosworth, Chief of the United States Forest Service, Defendants—Appellees.

No. 02–35687.

D.C. No. CV–01–00177–DWM.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 3, 2002.

Decided Jan. 8, 2003.

Before B. FLETCHER, KLEINFELD and McKEOWN, Circuit Judges.

MEMORANDUM *

Native Ecosystems Council and other advocacy groups (collectively, "Native Ecosystems") appeal the district court's grant of summary judgment in this APA review case. Native Ecosystems argues that the United States Forest Service's decision to sell timber from the Helena National Forest is in violation of the National Forest Management Act (NFMA), 16 U.S.C. § 1601 et seq., and the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 et seq.

We review de novo. Oregon Natural Resources Council v. Lowe, 109 F.3d 521, 526 (9th Cir.1997). When considering whether the agency's decision was consistent with the Helena National Forest's Forest Plan, as required by the NFMA, we must determine whether the agency's actions were "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). See also Oregon Natural Resources Council, 109 F.3d at 526. When reviewing the adequacy of an environmental impact statement, we ask whether the agency has taken a "hard look at a decision's environmental consequences." Id. (citations omitted). This review is "essentially the same" as review for abuse of discretion. Neighbors of Cuddy Mountain v. United States Forest Service, 137 F.3d 1372, 1376 (9th Cir.1998).

Native Ecosystems argues that the timber sale, as described in the environmental impact statement, is inconsistent with the forest plan's old growth forest standards. The forest plan requires that "[f]ive percent of each third order drainage should be managed for old growth." Native Ecosystems offers no evidence that this will not be true after the timber sale.[1] The Forest Service considered the potential impact on species associated with old growth forests, such as the flammulated owl, and determined that although no identifiable individuals live within the areas marked for logging, the Forest Service concluded that the logging could increase foraging habitat for these species. The agency took the required "hard look" at the environmental data in its decision that the timber sale will have no effect on old growth forests.

Native Ecosystems also argues that the timber sale will be "below cost," meaning that the net value of the sale for the Forest Service, after all costs of remediation from the forest fire (not just the logging) are included, will be negative. They argue that this requires the preparation of a supplemental environmental impact statement. The Forest Service claims that the sale will be profitable on its accounting.

■ Although we view the Forest Service's accounting practices in regard to this sale with considerable skepticism, Native Ecosystems has not identified any authority prohibiting the Forest Service from approving a sale merely because it is unprofitable. 40 C.F.R. § 1502.9 requires

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. "Designation, marking when necessary, and supervision of harvesting of trees" will be conducted by Forest Service employees rather than logging contractors, pursuant to 16 U.S.C. § 472a(g).

a supplemental environmental impact statement in two circumstances: when "(i) the agency makes substantial changes in the proposed action that are relevant to environmental concerns; or (ii) there are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts." Neither applies here.

Native Ecosystems argues that, because the project originally called for setting aside profits from the timber sale for restoration, the reduction in profits after recalculation changes the proposed action in a way relevant to environmental concerns. However, even if the funds for restoration are not obtained from other sources, as the Forest Service maintains, no supplemental EIS would be required because the environmental impact of the project without the planned restoration was thoroughly considered in the original EIS. *See Idaho Sporting Congress v. Thomas,* 137 F.3d 1146, 1152 (9th Cir.1998) (no supplemental EIS is required where the impact of the proposed timber sale was already considered along with another timber sale in an earlier EIS).

The only new information that arose subsequent to the final environmental impact statement was a change in the algorithm used to estimate the price of timber that would be sold in the proposed sale. In light of this change, the Forest Service's expected profits decreased considerably, but this is not information "relevant to environmental concerns." "[E]conomic or social effects are not intended by themselves to require preparation of an environmental impact statement." 40 C.F.R. § 1508.14. *See also Association of Public Agency Customers, Inc. v. Bonneville Power Administration,* 126 F.3d 1158, 1186 (9th Cir.1997) (NEPA does not require agencies to review the economic consequences of their actions). The effect

that the timber sale would have on the environment was addressed in the final environmental impact statement. Thus, the decision to continue with the timber sale in the face of decreased monetary gain without a supplemental environmental impact statement was not arbitrary or capricious.

■ Native Ecosystems also argues that the cost analysis of the timber sale violates the Forest Plan. The Forest Plan requires that if "anticipated costs are higher than predicted high bids," the Forest Service should "defer the sale" or "proceed to sell the timber and provide proper documentation that benefits, other than immediate monitary [sic] return from the timber, are of importance." The Forest Service complied with the latter requirement by listing several non-monetary benefits in the final environmental impact statement, such as providing jobs for local sawmills and "accelerat[ing] recovery of the fire area through measures that will protect and retain soils, improve watershed values and maintain wildlife habitats." This is consistent with the Forest Plan, and therefore is consistent with the NFMA, and is not arbitrary and capricious.

Native Ecosystems also makes a broader argument about the inadequacy of the environmental impact statement. They urge us to consider the lack of an explicit discussion of the 1995 Beschta Report as evidence that the Forest Service did not take a "hard look" at the environmental consequences of its actions. While *Blue Mountains Biodiversity Project v. Blackwood,* 161 F.3d 1208, 1213 (9th Cir.1998), took note of this report in another context, we declined to address whether the "omission of any discussion of the Beschta report, alone, would discredit the Forest Service's decision not to prepare an EIS." *Id.* The case at bar differs in two important

respects from *Blue Mountains*. First, the final environmental impact statement indicates that the Beschta report *was* considered, and was listed in the bibliography. Second, once the Forest Service decides to produce an environmental impact statement, nothing requires it to include an explicit discussion of this particular report. Rather, it is to take a "hard look" at all available environmental data. The agency took a "hard look" at the available data and determined that salvage logging in this site-specific context would "accelerate recovery of the fire-damaged area."

AFFIRMED.

---

* This panel unanimously finds this case suitable for decision without oral argument. Fed R.App. P. 34(a)(2).

** Honorable Jane A. Restani, Judge, United States Court of International Trade, sitting by designation.

*** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.